**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Harris Wayside Furniture
Company, Inc., Harris
Furniture Company, Inc.,
and Harris Brothers
Furniture Company, Inc.</u>

     v.                                          Civil No. 06-cv-392-JM

<u>Idearc Media Corp., f/k/a
Verizon Directories Corp.</u>

**<u>O R D E R</u>**

This action arises out of a billing dispute between plaintiffs ("Harris Furniture") and defendant ("Idearc"), over publishing advertisements in defendant's telephone directories, popularly known as the "Yellow Pages."  Plaintiffs assert five causes of action based on defendant's refusal to publish advertisements in its 2005 Yellow Pages.  Although plaintiffs commenced this suit in Belknap County, New Hampshire, Superior Court, defendant removed the action to this court because of the diversity of the parties and the amount in controversy.  <u>See</u> Document no. 1; <u>see</u> <u>also</u> 28 U.S.C. §§ 1446 (removal statute) & 1332 (diversity jurisdiction statute).  Defendant then moved to dismiss the complaint, which is currently before the court.  <u>See</u>

Document no. 14.  For the reasons set forth below, defendant's
motion is granted in part, and denied in part.

<u>Discussion</u>

**A.  Background**

Plaintiffs are three furniture stores that operate in
Laconia, Plymouth and Chichester, New Hampshire and are owned by
the same family.  They have advertised their stores in the
defendant's Yellow Pages directories for several years.  In 2000
and 2001, defendant made some bookkeeping errors, which resulted
in one of plaintiffs' stores being billed for the other stores'
advertising.  Robert Harris, one of the owners, contested the
bill, claiming the charges had already been paid and had been
improperly credited to the wrong account.  This prompted a string
of correspondence between Mr. Harris and defendant through the
fall of 2001, and resulted in defendant referring the billing
dispute to a collection agency.  In March 2002, the collection
agency informed Mr. Harris that plaintiffs owed defendant
$10,043.00 in principal, plus another $2,810.75 for interest and
fees, for a total of $12,853.75.

On March 22, 2002, Mr. Harris reached an agreement with

defendant's employee, Cindy Bundy, regarding the disputed amount. Ms. Bundy agreed to accept $7,700.00 from plaintiffs, and to adjust the amount owed by $2,343.00, to satisfy the outstanding principal amount of $10,043.00 and to resolve the dispute. Plaintiffs sent defendant a check for $7,700.00, which defendant cashed on April 2, 2002. Plaintiffs' next bill from defendant, dated April 21, 2002, reflected a $0.00 balance on the account.

For the next three years, business continued as usual between the parties, with defendant extending plaintiffs' credit and plaintiffs timely paying the bills received. In May 2005, Mr. Harris entered into a new agreement to advertise the Laconia and Plymouth stores in defendant's Super Yellow Pages directory that was to be published that summer. In September 2005, however, Mr. Harris learned the stores' advertisements were not in the directory as he had expected. Defendant's district sales manager informed Mr. Harris that the ads had not been included because plaintiffs had an outstanding balance due of $2,343.00, the exact amount plaintiffs thought had been forgiven when the settlement was reached in March 2002. Plaintiffs were further notified that this outstanding balance caused plaintiffs to be placed on a "credit restriction" status, requiring plaintiffs to

either pay the balance due or prepay one year in full before defendant would publish plaintiffs' advertisements.

Since plaintiffs contested the outstanding balance, they opted to prepay 100% of the cost of advertising for their Chichester store in the Concord directory.  Despite this advance payment, defendant continued to bill plaintiffs monthly for the Chichester store advertising.  Since April 10, 2006, defendant and two collection agencies have pursued collection of the monthly bills, which plaintiffs have not paid because of the prepayment they had already made.

**B.  Standard of Review**

The standard of reviewing a motion to dismiss is well-settled.  See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006) (citing authority).  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to "'give the defendants fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests.'"  Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  All factual averments are accepted as true and all reasonable inferences therefrom are indulged in plaintiff's favor.  See Aulson v. Blanchard, 83 F.3d

1, 3 (1st Cir. 1996).  Despite this generous standard of review,
plaintiffs must support their claims with specific facts, not
conclusory allegations and bald assertions, respecting each
material element of the legal theory asserted.  See id. (citing
Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 52 (1st Cir.
1990); see also Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st
Cir. 1988).  A complaint will be dismissed under Rule 12(b)(6)
"'only if it is clear that no relief could be granted under any
set of facts that could be proved consistent with the
allegations.'"  Lalonde v. Textron, Inc., 369 F.3d 1, 6 (1st Cir.
2004) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514
(2002)).  The issue, therefore, is "'not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to offer
evidence to support the claims.'"  Swierkiewicz, 534 U.S. at 511
(internal quotation omitted).  With these standards in mind, I
turn to the five claims plaintiffs assert.

     **C.  Governing Law**

     Plaintiffs' claims here are based on common law and New
Hampshire statutory law.  Defendant argues, however, that this
dispute is governed by Texas law, because the "Application for
Directory Advertising" expressly provides Texas law shall govern

"all disputes relating to this Application."  <u>See</u> Document no.
14, Exhibit A, Section 19 (the "Application").  Because this
action is before the court based on the diversity of the parties,
the forum state's choice of law rules apply to determine whether
Texas or New Hampshire law governs the dispute.  <u>See</u> <u>Klaxon Co.
v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941) (following
<u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938) to conclude
that federal courts exercising their diversity jurisdiction must
follow the conflict of laws rules of the states in which they
sit); <u>see</u> <u>also</u> <u>Guy v. Starwood Hotels & Resorts Worldwide, Inc.</u>,
No. 03-cv-183JD, 2005 WL 2172034, at *2 fn.4 (D.N.H. Sept. 7,
2005) (citing authority).  In asserting Texas law governs the
dispute here, defendant relies on the New Hampshire choice-of-law
rule that a court will uphold governing law provisions in a
contract that the parties freely negotiated.  <u>See</u> <u>Alternative
Sys. Concepts, Inc. v. Synopsys, Inc.</u>, 374 F.3d 23, 32 (1st Cir.
2004) (stating rule that a federal court may accept the parties'
agreement about what law governs); <u>see</u> <u>also</u> <u>Gilbert v. Atl. Trust
Co.</u>, No. 04-cv-327, 2006 WL 1049707, at *2, fn. 4 (D.N.H. Apr.
19, 2006) (citing New Hampshire law upholding choice of law
provisions in contracts); <u>Allied Adjustment Serv. v. Heney</u>, 125

N.H. 698, 700, 484 A.2d 1189, 1191 (1984) (citing <u>Restatement</u>

<u>(Second) of Conflict of Laws</u>, § 187)).

Defendant's reliance on this rule is misplaced, however,

because under both New Hampshire and Texas law, the Application

is not a contract, so its provisions are not binding on the

parties.  The Application provided:

> PUBLISHER NOT BOUND TO PUBLISH.  I understand
> that <u>this Application is not an agreement by</u>
> <u>Publisher to publish my advertising</u> and Publisher
> may choose not to publish my advertising.. . .
> I understand that <u>Publisher will be bound by</u>
> <u>this Application only if and when Publisher</u>
> <u>publishes my advertising</u>, and that such publication
> will evidence Publisher's agreement to publish my
> advertising on the terms set forth in this Application
> (<u>but only as to the advertising published, and not</u>
> <u>as to any advertising listed on this Application</u>
> <u>not published</u>).. . . . If Publisher does not publish
> my advertising, it will refund any money I previously
> paid for the advertising not published and have no
> further obligation to me, and I will have no
> further obligation to Publisher.

Application, Section 2 (emphasis added).  This section explicitly

states "Publisher will be bound by this Application only if and

when" an ad is published.  To give Section 2 its plain meaning,

Section 19's provision for Texas law to govern all disputes

"relating to this Application" could only be invoked after

defendant became bound to the Application by publishing

plaintiffs' advertisements.

7

By its express terms, the Application was an offer to contract, not a contract.  Under both New Hampshire and Texas law, a contract is formed only after an offer has been accepted and consideration has been exchanged.  See Syncom Indus. v. Wood, __ N.H. __, 920 A.2d 1178, 1187 (2007) ("Offer, acceptance, and consideration are essential to contract formation."); see also Chisholm v. Ultima Nashua Indust. Corp., 150 N.H. 141, 144, 834 A.2d 221, 225 (N.H. 2003) (same); Vt. Info. Processing v. Mont. Beverage Corp., No. 08-06-00094-CV,  __ S.W.3d __, 2007 WL 1635163, at *4 (Tex. App. June 7, 2007) (same).  "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994) (quoting Restatement (Second) of Contracts, § 24 at 71 (1981) and citing 1 Corbin on Contracts § 1.11 at 31 (rev. ed. 1993)).  The Application manifested plaintiffs' "willingness to enter into a bargain" with defendant to publish their advertising, and clearly communicated that defendant's "assent to that bargain [was] invited and [would] conclude it."  Bourque, 42 F.3d at 708.  As such, it was simply an offer to contract for advertising, nothing more.  See id.; see

8

<u>also</u> <u>Chisholm</u>, 150 N.H. at 145 (explaining a valid offer may propose the exchange of a promise for a performance).

Because there was never an enforceable contract, Section 19's provision for Texas law to govern disputes arising out of the Application is inapplicable.  <u>See</u> <u>Allied Adjustment Serv.</u>, 125 N.H. at 700, 484 A.2d at 1191 (upholding choice of law provision <i>in a contract</i>).  There is no need for a choice of law analysis, and New Hampshire law governs the claims asserted here.[1]  <u>See</u> <u>SIG Arms Inc. v. Employers Ins.</u>, 122 F. Supp. 2d 255, 259 (D.N.H. 2000) (placing burden of proof on party asserting the application of a foreign state's law).

**D.  Claims for Relief**

<u>1.  Implied Duty of Good Faith and Fair Dealing</u>

Plaintiffs entitle count I "Consequential Damages and

---

[1]Defendant does not proffer an argument outside of the contract provision for why Texas law should govern this dispute. Absent some showing by defendant of a conflict between Texas and New Hampshire law, rendering a choice of law analysis necessary, I am obliged to apply New Hampshire law to the claims plaintiffs assert here.  <u>See</u> <u>Guy</u>, 2005 WL 2172034, at *2 fn.4  (citing <u>Keeton v. Hustler Magazine</u>, 131 N.H. 6, 13, 549 A.2d 1187 (1988) to explain that the first question is whether the substantive law of the interested states actually conflicts and applying New Hampshire law where no conflict shown); <u>see</u> <u>Young v. Lepone</u>, 305 F.3d 1, 13 (1st Cir. 2002) (explaining no choice of law analysis necessary where no conflict between the law exists); <u>see</u> <u>also</u> <u>SIG Arms, Inc.</u>, 122 F. Supp. 2d at 259 (same).

Attorney's Fees," which does not state a cause of action but rather states the relief sought.  In this count, however, plaintiffs allege defendant had a duty "to keep true, complete and accurate records and to properly invoice plaintiffs for their respective advertising charges and to deal with plaintiffs fairly and in good faith."  <u>See</u> Document no. 1, Notice of Removal, Exhibit A, Writ of Summons filed in Belknap County Superior Court, dated September 5, 2006 ("Writ"), Count I.  Plaintiffs further allege defendant breached its duty to treat them fairly, when it accepted plaintiffs' advertising orders for the 2005 directory but failed to publish them, and restricted plaintiffs' credit because of the disputed outstanding balance, as a "malicious" attempt to compel payment of the $2,343.00 balance purportedly due.  Plaintiffs claim to have lost revenue because of the unpublished advertising.

Defendant argues count I should be dismissed because it is essentially a contract claim, despite sounding in tort, and under the Application it was neither obliged to publish the advertising nor is it liable for consequential damages resulting from its decision not to publish the ads.[2]  Defendant further argues that

_____

[2]Defendant cites Texas law to support its position, but also references New Hampshire cases which stand for the same legal

because the Application expressly reserved defendant's right to decline to publish the advertising, it did not breach the implied duty of good faith and fair dealing when it declined to publish the ads.  Accordingly, defendant concludes, plaintiffs have no breach of contract claim and Count I should be dismissed.

Defendant's argument reads plaintiffs' complaint in count I too narrowly.  Defendant contends that Count I "is based entirely on the assertion that Idearc had breached a duty to publish the Plaintiff's [sic] advertisements in its 2005 directories."  Doc. No. 14 at 9.  The "duty" plaintiffs elude to is broader than a mere "duty to publish," which could have arisen only if the Application had been accepted and a contract had been formed, neither of which happened here.  While Count I may be inartfully pled, and appears to combine elements of both a contract and a tort claim, generously construing the complaint in plaintiffs' favor as I am required to do at this preliminary stage of review, Count I states a claim for a breach of the implied duty of good faith and fair dealing in contract formation.  See Donovan v. Castle Springs, No. 01–413–M, 2002 WL 31906183, at *8 (D.N.H. Dec. 20, 2002) (explaining how the implied duty of good faith and

propositions as the Texas cases on which it relies.  As discussed above, New Hampshire law governs the claims asserted here.

fair dealing arises in three distinct categories of contract cases, including the actions taken to form a contract).

Under New Hampshire law, contract formation carries implied good faith obligations which are "'tantamount to the traditional duties of care to refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it.'"  Id. at *9 (quoting Centronics Corp. v. Genicom, Corp., 132 N.H. 133, 139, 562 A.2d 187, 191 (N.H. 1989)).  This "good faith bar to misrepresentation is antecedent to the agreement itself." Centronics Corp., 132 N.H. at 139.  To state a claim based on a breach of the implied duty of good faith and fair dealing in contract formation, plaintiffs must allege defendant made a misrepresentation that induced them to enter into a contract. See Donovan, 2002 WL 31906183 at *9.  "One acts in bad faith, under these circumstances, by making a promise, without any intention of keeping it, for the purpose of inducing another to enter into a contract."  Id. (citing Hydraform Prods. Corp. v. Am. Steel & Aluminum Corp., 127 N.H. 187, 200, 498 A.2d 339 (1985)).

12

Accepting as true plaintiffs' claim that defendant accepted their advertising orders for the 2005 directory with no intention of publishing the ads, but rather for the purpose of extorting the outstanding balance which plaintiffs believed had been settled in March 2002, I find that plaintiffs allege the minimal facts necessary to state a claim for a breach of the implied duty of good faith in contract formation.  Plaintiffs' assertion that defendant "maliciously attempted to compel payment" by restricting their credit, <u>see</u> Writ, count I, suggests the type of bad faith making of a promise – here to publish advertising – to induce plaintiffs into signing the Application, which defendant then used to its advantage to collect on a previously settled debt.  <u>See</u> Plntffs' Obj. to Def.'s Mot. to Dismiss (Document no. 18) at 5.  I find these allegations clear the threshold of putting defendant fairly on notice of the claim lodged against it in Count I.  Defendant's motion to dismiss Count I, therefore, is denied.

<u>2.  Fraudulent and Negligent Misrepresentation</u>

Counts II and III are substantively similar, differing only to the extent that Count II asserts fraudulent misrepresentation while Count III asserts negligent misrepresentation.  In both

counts, plaintiffs claim defendant, in order to justify its refusal to publish the ads in 2005, misrepresented that an unpaid balance was due.  As in Count I, the claims link the March 2002 settlement with the 2005 refusal to publish, muddling what, in fact, plaintiffs assert was the challenged misrepresentation on which they relied.

Defendant argues the only representation it made was that plaintiffs had an outstanding balance, which was made after plaintiffs had executed the Application and, therefore, plaintiffs could not have relied on that representation when they decided to advertise with defendant in 2005.  Defendant further contends that the negligent misrepresentation claim is based on the alleged breach of contract, which is not a cognizable cause of action.  Defendant concludes that plaintiffs cannot argue both that defendant settled the 2002 dispute by accepting their $7,700 payment, and that defendant's 2002 agreement to the settlement was, in fact, a misrepresentation.  <u>See</u> Document no. 14 at 12.

I disagree.  Indulging all reasonable inferences from the facts alleged in plaintiffs' favor, Counts II and III complain that the March 2002 "settlement" was the misrepresentation on which plaintiffs relied when they continued to do business with

defendant.  Plaintiffs claim that in 2002 defendant conducted itself in a way which indicated it accepted the $7,700 as payment in full.  That apparent acceptance was misrepresented, because, in 2005, defendant, contrary to the terms of the prior agreement, claimed that a balance was still owed by plaintiffs, and refused to publish plaintiffs' advertising until that balance was paid.

### (a)   Fraudulent Misrepresentation

Under New Hampshire law, to state a claim for fraud, plaintiffs must allege that defendant "'intentionally made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely on it.'"  M&D Cycles, Inc. v. Am. Honda Motor Co., 208 F. Supp. 2d 115, 120 (D.N.H. 2002) (quoting Snierson v. Scruton, 145 N.H. 73, 77, 761 A.2d 1046 (2000)), aff'd, 70 Fed.Appx. 592 (1st Cir. 2003); see also Alternative Sys. Concepts, 374 F.3d at 29, fn.5 (stating elements of claim under New Hampshire law). Plaintiffs must also allege they justifiably relied on that representation, to their detriment.  See M&D Cycles,, 208 F. Supp. 2d at 120 (citing Gray v. First NH Banks, 138 N.H. 279, 283, 640 A.2d 276 (1994)).  Finally, the factual details of the fraud must be specifically alleged.  See Snierson, 145 N.H. at

77.

Plaintiffs allege defendant misrepresented that plaintiffs' account balance was zero, while knowing that it did not accept that the March 2002 agreement had settled the disputed amount owed.  Plaintiffs further allege defendant made that misrepresentation to induce them into ordering advertising in 2005.  Plaintiffs assert they justifiably relied on the misrepresentation, because their accounts reflected a zero balance over the three years from April 2002 until May 2005 when they executed the Application.  Finally, plaintiffs claim that reliance caused them detriment, both because defendant did not publish their ads and because defendant attempted to use the 2005 Application to extort $2,343.00 from them.  At this preliminary stage of review, these allegations sufficiently state a claim for fraudulent misrepresentation.  Defendant's motion to dismiss Count II is denied.

### (b)  Negligent Misrepresentation

To state a claim for negligent misrepresentation, plaintiffs must allege (i) defendant misrepresented a material fact, (ii) on which they justifiably relied.  See Snierson, 145 N.H. at 78 (citing Hydraform Prods. Corp., 127 N.H. at 200).  "'It is the

16

duty of one who volunteers information to another not having equal knowledge, with the intention that he [or she] will act upon it, to exercise reasonable care to verify the truth of his [or her] statements before making them.'"  Id. (quoting Patch v. Arsenault, 139 N.H. 313, 319, 653 A.2d 1079, 1084 (1995)).  As outlined above for the fraudulent misrepresentation claim, plaintiffs have alleged enough facts that show defendant knew it was misstating plaintiffs' account balance between April 2002 and May 2005, and that plaintiffs justifiably believed their account had been paid in full when they executed the Application in 2005, to state a claim for negligent misrepresentation.  Defendant's motion to dismiss Count III is also denied.

### 3.  RSA 358-A Claim

In Count IV, plaintiffs contend defendant's same misrepresentation of their account balance, its solicitation of plaintiffs to advertise in the Yellow Pages, its subsequent placement of plaintiffs on credit restriction and its refusal to publish the ads pending payment of the outstanding $2,343, violated the statutory prohibition against unfair and deceptive trade practices, codified at New Hampshire Rev. Stat. Ann.

("RSA") 358-A (1995).[3]  Defendant seeks to dismiss this claim
because the allegations are not among the enumerated offensive
acts outlined in the statute, see RSA 358-A:2 (Supp. 2006), nor
do they describe a "'level of rascality that would raise an
eyebrow of someone inured to the rough and tumble of the world of
commerce.'"  Document no. 14 at 13 (quoting State v. Moran, 151
N.H. 450, 452, 861 A.2d 763 (2004)).  Again defendant's argument
is unavailing.

New Hampshire courts have construed RSA 358-A broadly to
protect against the full spectrum of unethical or unscrupulous
actions that can arise in the business or trade context.  See
Milford Lumber Co. v. RCB Realty, 147 N.H. 15, 18, 780 A.2d 1259,
1261 (2001); see also Anheuser-Busch Inc. v. Caught-on-Blue,
Inc., No. 02-196-JD, 2003 WL 21715330, at *6 (D.N.H. July 22,
2003) (explaining that RSA 358-A provides a non-exclusive list of
unlawful acts or practices).  Ordinary breaches of contract,
statements in the form of opinion, or mere puffery are not
actionable.  See Private Jet Servs. Group, Inc. v. Sky King,

_____

[3]In their motion papers, the parties mistakenly argue
whether the Texas Deceptive Trade Practices Act can be invoked
here.  See Tex. Bus. & Com. Code Ann. § 17.46(a) ("DTPA").  As
previously explained, New Hampshire law governs this dispute.
Since plaintiffs have not moved to amend the complaint to add a
claim for a violation of the DTPA, I decline to consider it now.

Inc., No. 05-98-JD, 2006 WL 2864057, at *5 (D.N.H. Oct. 4, 2006).

To determine whether a challenged action is unfair or deceptive,

the court must inquire:

> "(1) whether the practice, without necessarily
> having been previously considered unlawful,
> offends public policy as it has been established
> by statutes, the common law, or otherwise –
> whether, in other words, it is within at least
> the penumbra of some common-law statutory or
> other established concept of unfairness;
> (2) whether it is immoral, unethical, oppressive,
> or unscrupulous; (3) whether it causes substantial
> injury to consumers (or competitors or other
> businessmen)."

Milford Lumber Co., 147 N.H. at 19 (quoting FTC v. Sperry &

Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972) (internal

quotation omitted)).

Although defendant argues that the challenged conduct is

limited to the credit restriction and refusal to publish,

plaintiffs' real focus appears to be on how defendant misused the

2005 Application to coerce payment of $2,434.00 which plaintiffs

believed had been forgiven nearly three years previously.  At

base, this action involves defendant reneging on a settlement

agreement, which, by its words and conduct, defendant had

communicated it had accepted.  Accepting the facts alleged as

true and indulging all reasonable inferences in plaintiffs'

favor, I find this about face on the settlement agreement was unfair, and defendant's decision to restrict plaintiffs' credit and not publish their ads until that previously settled debt was paid rises to the level of rascality needed to state a viable RSA 358-A claim.  Defendant's motion to dismiss Count IV is denied.

### 4.  Defamation

Plaintiffs' final count asserts a claim for defamation. "Typically, '[a] plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication.'"  Thomas v. Tel. Publ'g Co., __ N.H. __, __ A.2d __, 2007 WL 1299870, at *3 (N.H. May 1, 2007) (quoting Pierson v. Hubbard, 147 N.H. 760, 763, 802 A.2d 1162 (2002)).  Here, plaintiffs' entire complaint arises out of defendant's failure, or refusal, to publish its advertisements.  Even generously reading the complaint in plaintiffs' favor, I can find no allegation of a false statement being published.  Moreover, plaintiffs declined to respond to defendant's motion to dismiss this claim.  Under the circumstances, defendant's motion to dismiss Count V is granted.

<u>Conclusion</u>

For the reasons set forth above, defendant's motion to dismiss (document no. 14) is granted with respect to Count V of the Complaint, and denied with respect to Counts I, II, III and IV.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:  June 25, 2007

cc:  Philip A. Brouillard, Esq.
     Lawrence M. Edelman, Esq.