UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Harris Wayside Furniture
Company, Inc., Harris
Furniture Company, Inc.,
& Harris Brosthers Furniture
Company, Inc.

    v.                              Civil No. 06-cv-392-JM

Idearc Media Corp.,
f/k/a Verizon Directories Corp.

**O R D E R**

Defendant has moved to exclude the testimony of plaintiffs' expert on lost profits damages, Mr. Michael L. Rosten, contending the testimony is inadmissible under both Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) (document no. 29). Plaintiffs intend to use Mr. Rosten's opinion to prove the amount of profits they allegedly lost because of defendant's failure to publish plaintiffs' ads in a local Yellow Pages directory. Defendant argues the opinion is unreliable and, therefore, inadmissible.

The standard for admitting expert witness testimony is not disputed. The party seeking to introduce the testimony is required to demonstrate that the expert is qualified, based on

the witness' "knowledge, skill, experience, training, or education," and that the opinion is: (1) "based upon sufficient facts or data," (2) "is the product of reliable principles and methods," and (3) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. These conditions of admissibility require the trial court to ensure "that proffered expert testimony rests on a sufficiently trustworthy foundation." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007) (citing Daubert, 509 U.S. at 597). This "gatekeeping function extends to all expert evidence, including economic analysis." Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 175 F.3d 18, 34 n.12 (1st Cir. 1999) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 1169 (1999)).

   Although defendant challenges Mr. Rosten's expertise, I find that he is certainly qualified to issue the opinion sought by plaintiffs, as an accountant with several professional certifications and substantial experience assessing damages like the lost profits at issue in this case. See Pls.' Mem. in Opp. to Def.'s M. in Limine (document no. 33) ("Pls.' Opp. Mem."), Aff. of Michael L. Rosten ("Rosten Aff."), Exs. A, B & C (document nos. 34-A, 34-B & 34-C). Defendants also challenge the

methods Mr. Rosten used to calculate plaintiffs' lost profits; however, both the "Yardstick" method and the "Before and After" method are accepted and reliable methodologies.  See Rosten Aff. ¶ 11, Ex. D at 3 & Ex. E at 1; see also Coastal Fuels of P.R., 175 F.3d at 24 n.3 (explaining both as being "two accepted methods of economic analysis"); Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 772 (1st Cir. 1996) (finding "before and after" method as an accepted methodology for demonstrating lost profits); Home Placement Serv., Inc. v. Providence Journal Co., 819 F.2d 1199, 1205-06 & n.7 (1st Cir. 1987) (describing both the yardstick and the "before and after" methods of proving lost profits in an antitrust case).  The critical issue here is whether Mr. Rosten applied those methodologies reliably to the facts to enable me to find that his opinion is based on a sufficiently trustworthy foundation to render it admissible.

### 1. The Yardstick Method

The threshold question in any yardstick method valuation is how comparable are the plaintiff, whose profits were lost, and the yardstick company, upon whose performance the plaintiff is basing its projections, to permit a legitimate comparison.  See id. at 1206.  The burden of proving comparability lies entirely

with the plaintiff.  See id. at 1207.  Among the factors to consider are:  similarity of products sold; respective markets of the two companies; the capital and organizational structures of the two firms; and whether the plaintiff and its yardstick conducted business, administratively and operationally, in the same way.  See id. at 1208.  Evidence of the similarities between the businesses enables reasonable conclusions to be drawn about how plaintiff may have performed based on the yardstick company's performance, but for the alleged intervening cause.  See id. at 1205-06 (plaintiff "must attempt to measure its damages with reference to the performance of one or more closely comparable firms in the same industry that, unburdened by the [defendant's conduct], successfully managed to earn profits.").

Defendant correctly argues that Mr. Rosten did not properly apply the yardstick methodology to this case and that his opinion based thereon should not be admitted.  According to Mr. Rosten, he primarily relied upon the National Home Furnishing Association ("NHFA") 2007 Retail Performance Report to calculate plaintiffs' lost profits.  See Rosten Aff. ¶ 9.  He also reviewed plaintiffs' financial records.  See id. ¶ 13.  How closely plaintiffs resembled the companies surveyed in the NHFA Report, however, was

4

not determined.  See Def.'s M. in Limine ("Def.'s M."), Exh. 2, Dep. of Michael L. Rosten (document no. 29-2) ("Ros. Dep.") at 40-44.

   Mr. Rosten did not know, nor did he investigate to find out, any characteristics of the NHFA members to develop even a basic profile of an NHFA member to compare with plaintiffs here.  See id. at 41-42 (no knowledge of size, geographic location, sales volume or market base of NHFA members).  The 2007 NHFA Retail Performance Report, on which Mr. Rosten based his calculations, compiled 134 responses to confidential surveys that had been sent to the "Top 200 retailers identified by Furniture Today in 2006," among others.  Id. at 43.  The responses were broken down into three groups, in which the top 25% were categorized as high profit companies, the bottom 25% as low profit companies, and the remaining 50% comprised the middle profit companies.  See id. at 46-49.  These profitability categories were not industry-wide, but were limited to the survey responders.  Id. at 49.  Mr. Rosten did not determine into which category plaintiffs would have fallen, but instead simply compared plaintiffs to the median profitability.  See id. at 49-51.

   Mr. Rosten also did not determine how representative of the

industry the survey responders were, or what types of retailers comprised the survey responders.  See generally id. at 39-56 (discussing how lost sales and lost profits estimates were done).  Although the NHFA Retail Performance Report provided "detailed results" that showed sales volume, geographic region and single versus multi-store companies, see Def.'s M., Ex. 6 (document no. 29-6) (2007 NHFA report at 51-60), Mr. Rosten did not limit his comparison to multi-store retailers in the Northeast, but used national averages.  See Pls.' Opp. Mem., Ex. D, Rosten's April 14, 2008 Expert Witness Report (document no. 34-D) ("Rosten's 4/14/08 Expert Report") at C-3 and D-3; see also Rosten Dep. at 61-62, 100-01.  Based on Mr. Rosten's own admissions, his limited knowledge about the business structure of the "Yardstick" stores simply does not justify his use of them to predict plaintiffs' performance.

These admissions evince that Mr. Rosten did not undertake to find a furniture store that was comparable to plaintiffs on any relevant factor.  Although Mr. Rosten testified that his use of the 2007 NHFA Retail Performance Report was a fair, reasonable and appropriate measure, and that his opinion was limited to the New England furniture industry market, id. at 56, plaintiffs have

failed to demonstrate that the 2007 NHFA Retail Performance Report contained information regarding similarly sized household furniture retailers, in comparable markets, that are operated in a manner like plaintiffs conduct their business.  I cannot find anything in the record that demonstrates whether plaintiffs shared a common market, in terms of either product or costumers, with any of the 134 survey responders.  The yardstick methodology requires similarity of enough business characteristics to make the comparison reasonable and the predictions based thereon trustworthy.  See Home Placement Serv., 819 F.2d at 1205 ("If the plaintiff's proffered evidence permits no more than pure speculation and guesswork, then the damage evidence is insufficient as a matter of law." (internal quote omitted)).

   Because plaintiffs have not shown how they are similar to the survey responders that formed the basis of the 2007 NHFA Retail Performance Report, that report is an unreliable yardstick and cannot reasonably measure what plaintiffs' performance would have been but for defendant's intervening conduct.  I conclude, therefore, that Mr. Rosten's opinion based on the 2007 NHFA Retail Performance Report, that was used as a yardstick to measure plaintiffs' lost profits, is not admissible under Federal

Rule of Evidence 702.

### 2. The "Before and After" Method.

The "before and after" method of estimating lost profits applies to ongoing businesses, like plaintiffs here, by comparing plaintiffs' profits before defendant's offending conduct with their profits following it.  See Home Placement Serv., 819 F.2d at 1205, n.7; see also 850 Aquidneck Ave. Assoc. v. Aquidneck Court Assoc., 97 B.R. 139, 148 (Bankr. D.R.I. 1989) (citing authority accepting the methodology).  This method requires plaintiff to have been in business long enough to compile an earnings record that allows an estimation of lost profits.  See Home Placement Serv., 819 F.2d at 1205, n.7.  Plaintiffs bear the burden of showing that defendant's failure to publish their advertisements caused the loss of their anticipated profits.  See Cambridge Plating Co., 85 F.3d at 771.  A "simple before-and-after financial picture of an established company" can suffice to demonstrate the loss, if causation is also established.  See id. at 772 (prevailing plaintiff where malfunctioning wastewater treatment system shown to cause lost profits, the amount of which was shown by comparing profits before and after the malfunction). "Lost profits generally need not be proved with 'mathematical

exactness,' but rather with a reasonable degree of certainty." See id. at 771.

Although Mr. Rosten initially reported not to have used the "before and after" method to calculate plaintiffs' lost profits, see Rosten's 4/14/08 Expert Report at 3, the record demonstrates that he apparently reconsidered and, in fact, employed that method. See Pls.' Opp. Mem. Ex. E, Rosten's 7/31/08 Supplement to Expert Witness Report (document no. 35) ("Rosten's 7/31/08 Expert Report) at 1.  Mr. Rosten researched the historical operating performance of plaintiffs' stores, from 2000 through 2006, using financial statements and income tax returns.  See Rosten Aff. ¶ 13.  He also established that sales fell in the stores after 2005, when the advertising was initially not published, and compared sales in 2006 and 2007 to sales before 2005.  See id. at ¶ 14.  This information is included in his supplemental expert report.  See Rosten 7/31/08 Expert Report, Exs. F & G (attaching graphs and tables).  Unlike the NHFA 2007 Retail Performance Report used in his yardstick method, Mr. Rosten looked at the actual "historic growth trends of the individual stores themselves," Rosten Dep. at 64, to project plaintiffs' future performance.  Id. at 65, 70-72, 94-97.

Because Mr. Rosten's opinion using the "before and after" method relied on an analysis of plaintiffs' three stores, including actual sales volume, operations, investment in advertising, and the actual performance of the stores, I find that he both used sufficient facts and data and properly applied the methodology to those facts.  His opinion regarding lost profits based on the before and after method of economic analysis is sufficiently reliable to render it admissible.  See Fed. R. Evid. 702.

### 3. Other Arguments against Admissibility

Defendants make two additional arguments against admitting Mr. Rosten's expert opinion, which are disposed of as follows.

First, defendant argues that plaintiffs failed to prove causation, asserting that Mr. Rosten's opinion attributes every dollar of lost profits to defendant's failure to print plaintiffs' advertising.  See Def.'s Mot. at 13.  Defendant contends plaintiffs' expert's opinion should be excluded because Mr. Rosten "simply assumed causation – that [defendant] was responsible for causing any lost profits . . . ," Def.'s Reply Mem. at 10, without considering other factors that could have caused plaintiffs' damages, including a declining real estate market, the overall state of the economy, and other changes in

plaintiffs' advertising methods.  See id.

   Defendant's challenge to the "factual underpinnings of [Mr. Rosten's] investigation ... go to the weight of the proffered testimony, not to its admissibility."  Crowe, 530 F.3d at 18. Plaintiffs carry the burden of proving that defendant's failure to publish the advertising caused their damages, before the amount of those damages is measured by either the yardstick method or the before and after method.  See Coastal Fuels of P.R., 175 F.3d at 24 n.3 (differentiating between causation and economic analysis of what plaintiff's "but-for" profits would have been ).  Defendant can cross-examine Mr. Rosten about other factors that may have adversely impacted plaintiffs' profits, like the alternative advertising mediums plantifs used or the declining economy in general and real estate market in particular.  "These matter are for the jury, not for the court. This is as it should be; the district court's gatekeeping function ought not to be confused with the jury's responsibility to separate wheat from chaff."  Crowe, 506 F.3d at 18.

   Finally, defendant challenges Mr. Rosten's claim that he compared plaintiffs' annual changes in furniture sales with annual changes in residential home sales in the region from 2001

through 2007, and found that "no strong correlation exists between actual retail sales and single-family residential home sales," as documented in Exhibit I.  See Rosten Aff. ¶ 20 & Ex. I (part of document no. 35).  Defendants point out that Mr. Rosten's statement in his affidavit is inconsistent with his position in his expert report, that "[t]he demand for furniture is influenced primarily by new and existing home sales and the overall state of the economy."  Rosten's 7/31/08 Expert Report at 2.  Defendant argues these two statements are in direct conflict and that the claim that there is no strong correlation between home sales and furniture sales made in Mr. Rosten's affidavit should be excluded because it is untimely and unfounded.  See Def.'s Reply Mem. at 6-7.

   The record does not clearly indicate when the graphs attached to Mr. Rosten's affidavit as Exhibit I were first prepared.  While I agree with defendant that Mr. Rosten's statement in his affidavit that home and furniture sales are not correlated is inconsistent with his position in the expert report that the two are related, I cannot find, based on the record before me, that the information in Exhibit I should be excluded.  As the documents were filed with the court, it is not clear

whether Exhibit I was incorporated into Rosten's 7/31/08 Expert Report, or whether it was a new exhibit attached to his October 9, 2008 affidavit.  This fact is significant, because plaintiffs were required to disclose experts and expert reports by April 15, 2008, with supplements filed by July 31, 2008.  The challenged Rosten affidavit is dated October 9, 2008, less than one week before the deadline for defendant's challenges to expert testimony and three weeks after the deadline for summary judgment motions.

Also, Mr. Rosten's position in his expert report was that demand for furniture is influenced by both home sales *and* the overall state of the economy.  The graph in Exhibit I focuses only on home sales, without reflecting the "overall state of the economy" in any way.  It does not, therefore, necessarily, contradict Mr. Rosten's opinion in the 7/31/08 expert report, which acknowledged two distinct influences on furniture sales.

Defendant's motion to exclude Mr. Rosten's opinion evidence that no correlation between home and furniture sales existed in the relevant time period is denied, based on the current record.  This denial is without prejudice to defendant to file a new motion in limine specifically directed at the issue of when Mr.

Rosten first opined that there was no correlation between residential home sales and furniture sales between 2001 and 2007, to enable a fair evaluation of whether or not plaintiffs complied with the agreed-upon discovery plan.

## Conclusion

For the reasons set forth above, defendant's motion in limine (document no. 29) is granted in part and denied in part.

Defendant's motion is granted, to exclude Mr. Rosten's expert opinion to the extent it is based on the yardstick methodology of projecting plaintiffs' lost profits, based on the NHFA 2007 Retail Performance Report calculations.

Defendant's motion is denied to the extent that it seeks to exclude Mr. Rosten's expert opinion based on the before and after method of calculating lost profits.  That opinion evidence is admissible.

Finally, defendant's motion is denied to the extent it seeks to exclude Mr. Rosten's opinion that furniture sales are not correlated to home sales, without prejudice to defendant to renew this aspect of the motion based upon a clear record as to when this opinion was formulated.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  December 22, 2008

cc:  Lawrence M. Edelman, Esq.
     Philip A. Brouillard, Esq.